```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                       Alexandria Division

MICHAEL COKENOUR and          )
REBECCA COKENOUR,             )
                              )
          Plaintiffs,         )
                              )
v.                            )    Civil Action No.1:12-cv-720
                              )
AMERICAN RED CROSS,           )
                              )
          Defendant.          )
```

### MEMORANDUM OPINION

This matter comes before the Court on Defendant National American Red Cross' (the "Red Cross") Motion to Dismiss or in the Alternative for Summary Judgment.

In 2000, Plaintiff Michael Cokenour ("Cokenour") and the Red Cross entered into an employment agreement that included health care coverage provided by Red Cross through Blue Cross/Blue Shield to Cokenour. Cokenour identified his wife and children as dependents for purposes of his health insurance benefits. In February of 2009, Cokenour took a medical leave of absence pursuant to the Family and Medical Leave Act ("FMLA"). The following month, Cokenour received requests for documents for an audit by the Red Cross. As a result of the audit, Cokenour's dependents were removed from the Blue Cross/Blue Shield Group Health Plan effective June 1, 2009. Thereafter,

Plaintiff Rebecca Cokenour received medical treatment and incurred expenses that were not covered by health insurance. Cokenour contested removal of his dependents from the plan and filed an appeal of the denial of his dependents' insurance coverage for the time period of April 2009 through March of 2010.

In May 2010, Cokenour was advised that his position at the Red Cross would be eliminated due to a reduction in force. Cokenour then entered into a severance agreement (the "Agreement") with the Red Cross. The Agreement included eleven weeks of pay in exchange for his execution of a general release of claims against the Red Cross.

Although Cokenour was provided with forty-five days to consider the Agreement, he signed the document within thirteen days of receipt. Rebecca Cokenour signed the Agreement as a witness. The Agreement stated that it was entered into on Cokenour's "own behalf and on behalf of his family members. . ." The Agreement generally released and forever discharged the Red Cross from "any and all claims, legal or equitable, known or unknown, [that the] employee ever had, now has or may have against" the Red Cross and its affiliates, including claims "arising out of or relating to the employment relationship between Employee and [the Red Cross] or Employees separation therefrom." More specifically, the Agreement precluded "claims

of denial of leave or retaliation for taking leave under the Family and Medical Leave Act or any state or local statute or ordinance providing for family or medical leave." The Red Cross was also released from all claims relating to ". . . breach of implied or express contract of any kind, negligence, defamation, fraud, misrepresentation, invasion of privacy, or infliction of emotional or mental distress." Further, the Agreement expressly stipulated, in more than one place, that Cokenour had read and fully understood the Agreement, had the opportunity to consult an attorney and entered into the Agreement knowingly and voluntarily. Cokenour executed the Agreement and his employment with the Red Cross ended on May 24, 2010.

On June 1, 2010, the Red Cross issued a decision, in response to Cokenour's appeal of the denial of his dependents' insurance coverage, maintaining that the coverage had properly terminated between April 2009 and March 2010. On May 29, 2012, Plaintiffs filed a five-count Complaint against the Red Cross in the Circuit Court of Fairfax County, Virginia. The Complaint alleged negligence, violation of the FMLA, breach of contract, slander to credit, and intentional infliction of emotional distress. On July 12, 2012, the Red Cross filed a Notice of Removal to this Court and now moves for summary judgment.

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "The burden of the moving party . . . may be discharged by simply pointing out 'that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). That is, "[t]he moving party need not produce evidence, but simply can argue that there is an absence of evidence" by which the nonmovant can prevail at trial. Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390, 393 (4th Cir. 1994).

The Court construes all reasonable inferences in favor of the non-moving party when determining whether there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The mere existence of some disputed facts does not merit a trial unless the disputed facts are material to an issue necessary for proper resolution of the case and the quality and quantity of the evidence offered to support a question of fact are adequate to support a jury verdict. Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th

Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

In this case there is no issue of material fact in dispute. The issue before the Court is whether the Red Cross' general release agreement is valid and enforceable so as to completely preclude Plaintiffs' claims. "[I]t will be presumed that [a contract] only involves the doing of a lawful and proper act, and will be sustained, as illegality is never presumed, but must be proven, or must clearly appear upon the face of the contract." Burdine v. Burdine's Ex'r, 36 S.E. 992, 994 (Va. 1900) (internal citations omitted). Additionally, courts generally enforce releases of federally protected rights in the employment context if the release was knowing and voluntary. See Kendall v. City of Chesapeake, Va., 174 F.3d 437, 441 n. 2 (4th Cir. 1999) (Employee's release of rights would be valid if it was both knowing and voluntary); Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974) (Employee properly waived his cause of action under the equal employment opportunity provisions of the Civil Rights Act as part of a voluntary settlement). "The scope

of a release agreement, like the terms of any contract, is generally governed by the expressed intention of the parties." First Security Federal Savings Bank, Inc. v. McQuilken, 480 S.E.2d 485, 487 (Va. 1997) (internal citation omitted). Moreover, "[w]here parties contract lawfully and their contract is free from ambiguity or doubt, the agreement between them furnishes the law which governs them." Charles E. Russell Co., Inc. v. Carroll, 74 S.E.2d 685, 688 (1953) (internal citations omitted).

The existence of the Agreement, in the absence of additional facts, precludes Plaintiffs' claims. The Agreement specifically provided that the Red Cross was released from all claims relating to negligence, breach of contract, defamation, infliction of emotional or mental distress, and the FMLA. The Agreement, like any contract, is presumed valid by the Court. The face of the Agreement presents no illegality, and Plaintiffs have failed to raise a question as to any extrinsic illegality.

Plaintiffs do not dispute the fact that the Agreement itself bars all claims, but instead speculate that the Agreement may be invalid due to possible circumstances surrounding the execution of the Agreement. Plaintiffs suggest that there may be potential extrinsic evidence that affects the enforceability of the release agreement; however, they have set forth no facts or evidence that would indicate duress, undue influence or any

other circumstance that would render the agreement invalid and unenforceable. In fact, Cokenour knowingly and voluntarily signed the general release agreement on behalf of himself and his dependents, including Mrs. Cokenour. Additionally, Mrs. Cokenour read and signed the Agreement herself, as a witness.

Because the Plaintiffs fail to adduce any fact or plausible circumstance that would call the Agreement's validity into question, the Agreement retains the presumption of validity and there are no material facts in dispute. The Agreement executed by Mr. Cokenour releases the Red Cross of all claims in this case and Defendants are therefore entitled to judgment as a matter of a law.

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted. An appropriate order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
August 2_8_, 2012